The opinion of the Court was delivered by
OoiiCQCK, J:
This was an action of trover against the sheriff of Beaufort District, for the recovery of the value of certain negroes sold by him as the property of Barnaby Branford, who had made a marriage settlement on his wife, previously to marriage. The settlement was produced and proved. It conveyed to the plaintiff, as trustee, forty negroes in trust, first, to the use of the grantor himself_ during life; secondly, to the use of the intended wife, if she should survive him, and over to the issue of the marriage. It settled, also, to the same uses, every thing belonging to the intended wife. It then appeared by the testimony of Wm. Smith, that the negroes, for which this suit was brought, were part of those contained in the settlement. That Branford had died before the suit; that he had forty or forty-one negroes at the time of the settlement. Upon seeing the list of those contained in the deed, he did not recollect any other. The young lady at the time of marriage had six negroes, and expected something from the grandmother.
The defence was then entered into.
The first ground was, that the deed of marriage settlement was nul and void as to creditors, since it had *notbeen recorded agreeably to the Acts of the Legislature. The settlement was dated 14th April, 1812, and recorded in July, 1813.
2.. That it was a fraud at the common law, as was manifest from the inequality of the settlement made; forty-one negroes by him, and only six by her; and from his being largely indebted at the time, and becoming more so. immediately afterwards, wherefore,
3. The sheriff was justified under sundry executions lodged in his office against the said B. Branford, and not liable to this action.
On the first ground, the settlement was relied on as evidence. To establish the second, the fact of the deeds not having been recorded as the law directs, was insisted on, which showed that it was secret and concealed, and therefore a fraudulent transaction; the circumstance of Bran-ford’s having conveyed forty out of forty-one or forty-five negroes, when *269 the young lady had but six or seven ; the records of the Court, by which it appeared that he was largely indebted at the time on contracts, some of which were due before, and others after marriage, to the amount of at least five or six thousand dollars, and that suits were pending on most of his debts. The inventory of the estate was also given in evidence; it had been returned to the ordinary by the administratrix, Mrs. Branford, for whose benefit this action was commenced. In it there were ten negroes named, which were also in the marriage settlement, and this circumstance was relied on to show, that she did not consider the settlement as valid.
Lewis Harder and J. Roberts, then proved that Branford’s negroes had been repeatedly sold by the former sheriff of Beaufort district, without any objection; and that Branford himself, and wife, the real, plaintiff, had’both offered their negroes for sale in families.
It was also proven, that when these negroes were levied on, Branford had no other property than such as was embraced in the settlement, and that the plaintiff never exercised any authority or control over them.
*To rebut this, Wm. .Smith was again called, who said, that at the time of this, settlement, Branford had a- real estate of some value.
Tp this defendant’s counsel objected; contending that some other evidence, than the parol declarations of the witness should be adduced, tp show a title in Branford.
The presiding judge overruled the objection.
Smith then said, that Branford’s real property was worth, at the time of his marriage, , about six thousand dollars.
The presiding judge stated to the jury, that if the deed was such a one as the law required to be recorded, it had been recorded in time. " He also stated, that marriage was considered as one of the most valuable considerations, which could enter into a contract; that it was of such validity, when there was a reciprocity, that .it could, not be impeached-at law; that the reciprocity, in this case, appeared in a strong light. 1st. There was the marriage. 2d. There was the use of her property given up to him. 3d. There was also the use of his own property given also -to him during his life. He observed that the life estate might be sold by the sheriff, but no more; and concluded by directing the jury, if they thought the deed not fraudulent, to find for the plaintiff $2400, which was proven to be the value of the negroes sued for.
There was a- verdict for the plaintiff.
A motion was now made for a new trial, on seven different grounds ; but from the view which a majority of the Court took of the case, it will be unnecessary to state any other than the third, which was, “ that the deed not having been recorded, in the Secretary’s office, within three months after the execution thereof, was, in respect to creditors, fraudulent, and the estate intended to be secured, was subject and liable, to the payment of Branford’s debts, by the provisions of the Act of Assembly.
*The opinion of the Court was delivered by
Colcook, J.
On the part of the plaintiff, it was contended:
1. That the deed having been made before marriage, need not be *270 recorded at all; that the Act of 1785, relates only to marriage settlements, made after marriage.
2. That if the Act of 1785, does require this deed to be recorded, it is inoperative, because there is no sanction or penalty imposed for not recording such deeds; and,
3. That the proviso of the Act of 1792, contains a clear exception of all settlements made before marriage, and is, so far, in accordance with, and illustrative of, the objects of the Act of 1785.
The Act of 1785, (2 Brev. Dig. 45, P. L. 357,[1]) in its preamble, declares, “ that the practice prevailing in this State, of keeping marriage contracts and deeds in the hands of those interested therein, hath oftentimes been injurious to creditors and others, who have been induced to credit and trust such persons, under a presumption of their being possessed of an estate, subject and liable to the payment of their just debts.” It then enacts, that all and every marriage contract, deed, or settlement, then actually existing, shall be recorded in the Secretary’s office of this State ; giving to persons without the limits of the State, twelve months to record them, “ and all that shall hereafter be entered into for securing any part of the estate, real or personal, in this State, of any person or persons whomsoever, shall, within three months after the execution thereof, be duly proved, and in like manner to be recorded. ” Then follows an exception, and the sanction or penalty.
In the year 1792, an Act was passed,[2] (2 Brev. Dig. 46, 1 Faust, 209,) in the preamble of which, it is said, that the Act of 1785, “hath been found to be deficient and inadequate to remedy the mischiefs thereby necessary to be provided against, inasmuch as the sanction or penal clause of the said Act is judicially deemed and declared not to extend to, and comprehend, such marriage deeds, settlements, or contracts, as were atuaHy existing at and before the time of the passing of the *said Act;” and then it is enacted, that all such deeds, &c., as then existed, (that is, in the year 1785,) shall be recorded, within eighteen months, or be considered as fraudulent, and null and void with respect to and against creditors, and bona fide purchasers and mortgagees. And the second clause enacts, “ that Ull marriage contracts, deeds and settlements, to be made after the first of June next, shall therein describe, specify and particularise the estate intended to be conveyed, or shall have a schedule thereunto annexed, containing a description of the property intended to be conveyed, which shall be signed, executed and delivered by the parties to the deed, and subscribed by the same witnesses, and shall be recorded therewith,” and in default of such schedule and recording thereof, as aforesaid, the said marriage contracts, deeds and settlements, are declared to be fraudulent, and so forth. Then follows the proviso, “that where any marriage settlement shall be made previous to marriage, nothing herein contained shall be construed to extendió make the property settled thereby, liable in default of a schedule, or not being duly recorded, to the payment of any debts contracted by any husband previous to such marriage ; but only to such debts and contracts as shall have been incurred and made by the said husband subsequent to the marriage *271 taking place.” The deed in this case was made in 1812, since the last act on this subject. In every enacted clause which speaks of those deeds, which should be made after the year 1185, the word all is used. The preamble of the Act of 1185, speaks in general terms, “marriage contracts,” and the first enacting clause says, all and every marriage settlement now existing: nor is there anything to be found in any of the enacting clauses of either Act, which points to a distinction between settlements made before, and those made after, marriage. All, then, are comprehended in the enacting clauses.
But it is said, that the proviso of 1792, expressly excepts those which are made before marriage. Before I show the application of this proviso, I remark, *that there is nothing in the Act of 1192, which relates to the time within which, or to the place where, a deed to be thereafter made, shall be recorded; and the act of recording is only incidentally mentioned, when it says, “ the schedule shall be recorded therewith.” We must look to the Act of 1185, then for the time when,- and the place where, this deed is to be recorded, and that says it shall be recorded in the Secretary’s office, and within three months after the execution. And again, that there is no provision of the Act of 1192, which can relate to this deed, except that which requires that the property should be described in a schedule annexed. The property intended to be conveyed by this deed is specified, and therefore a schedule is rendered unnecessary.
I proceed to show to what the proviso relates: Its language is, “ that where any marriage settlement shall be made previous to marriage, nothing herein contained,” (that is, nothing contained in the Act of 1192,) shall be construed to extend to make the property settled liable in default (of what ?) of that which is required in the clause immediately preceding, a schedule and the recording thereof, but in the words of the proviso itself, “ of a schedule, or not being duly recorded,” which latter words, it is said, relate to the settlement, and not to the schedule. In the first place, it is clear that the-proviso must be connected by the words “ nothing herein contained” to something which is to be found in the Act of 1192, and cannot apply to any thing which is to be found in the Act of 1785. Now it is the Act of 1185, as has been shown, that requires the deed to be recorded in the Secretary’s office, and within three months from its execution, and not the Act of 1192. Confine the words, “ or not being duly recorded,” to something contained in the Act of 1192, and they obviously relate to the schedule which is required in the preceding clause. This is rendered the more obvious, when it is recollected that the preceding clause with great exactness, not only requires a schedule, but also that the schedule be recorded. By this construction *the manifest design and object of the Acts would be carried into execution. All marriage settlements are to be recorded; but those which are made before marriage, by the proviso of the Act of 1192, need not have a schedule, or if they have one, it is not necessary that it should be recorded, so far as relates to debts contracted before marriage ; but not as to those contracted after. For a schedule would ■ be of no importance to those to whom debts are due when the settlement is made, though it may be to those who may be disposed to give a credit after. The distinction made between debts due before, and those due after set *272 tlements made, shows that the exception is limited in its operation, and therefore shows a necessity for recording the deed; and so far goes to destroy the argument of plaintiff’s counsel — that it must be recorded to save the property from debts contracted after marriage. It is not necessary, nor do I undertake to determine the full extent and meaning of this proviso. By some it is contended, it is designed in the latter distinction to prevent the property of the wife from being liable to debts contracted by the husband previous to marriage. Be that as it may, I believe it was never before contended, that it rendered it unnecessary to record such settlements as were made before marriage. It would, perhaps, be a sufficient reply to the third objection, “that the penalty does not attach to the not recording this deed,” to say, that the judicial decision referred to, in the Act of 1792, goes no further than to say that it does not attach to the not recording deeds, which existed at the time of the passing the first Act, (1785,) which would imply that it does not attach to cases where the deeds have been made since that time. But it is not difficult to show that the sanction or penal clause does extend to, and embrace all, deeds made since. I remark, in the first place, that the Act of 1785, containing but one enacting clause, has been improperly divided into two in the printing of Judge Brevard’s Digest.
We are, then, according to the rule of construction, *to give a meaning to the Act if possible. It is admitted that there are words which are unintelligible in the second sentence of the Act. But if they be left out altogether, the Act reads well, and its meaning is plain and obvious. The exceptionable words follow immediately after the words, “lodged in the said office,” and are, “and in case any person or persons, (entered in without the limits of this State, which shall be recorded, or lodged to be recorded, in the said office, within twelve months from the date hereof,) whomsoever, interested shall neglect or refuse to record, or lodge the same in the manner, and within the times,” &c., declaring that they shall be fraudulent. Now, let the words, “ entered in without the limits of this State, which shall be recorded in the said office within twelve months from the date hereof,” be enclosed in a parenthesis, as above, and the rest of the sentence is complete, and the penalty applies to all- cases of recording, for'which a time is fixed. But without this, that part of the law which imposes the penalty, is clearly intelligible, and by using the word times, clearly refers to all the cases of recording, provided for in the first part of the Act. By inserting three words, to wit, “where settlements are,” before the first word in the parenthesis, “ entered,” the whole Act is made complete, and the intention of the Legislature obvious. It may be said we have no right to insert words, and as a general position, I will admit it. But when a law is unintelligible without, and it is manifest what are the words omitted, it is proper to do so. There can be no doubt that unintelligible words may be excluded, and that is sufficient for the present purpose.
But we are not without adjudged cases on the construction of this Act; for many have been decided in both the Courts, of law and equity. In Equity Deports, there are two cases after the case of Lennox and wife v. Wm. H. Gibbes, (1 vol. 305,) which is supposed to be the case alluded to, in the Act of 1792. The first is the case of Administrator of Wilson v. Wilson, et al., (do. 401,) wherein it was decided, that *273 *even the property of the wife, secured by settlement, before marriage, and on the express condition of her surrendering all claim to dower in the husband’s lands, was made liable to the husband’s debts contracted before marriage, on the' ground, that the deed being made after the year 1785, and not recorded within three months, was void as to bona fide creditors. In 2 Equity Reports, p. 254, Charity Forrest, by her Trustee, v. James Warrington, decided in 1804,[1] the same construction is given to the Act. This latter ease was, that of a purchaser.
King and Martin, for the motion. Petigru, Solicitor, contra.
Upon the whole, then, it is clear, that the law requires all marriage settlements to be recorded in the Secretary’s office; those which have been made since 1785, within three months from their execution. It may be doubted whether the object of recording them is effectually answered by requiring them to be recorded in the Secretary’s office ; but I think there can be but one opinion as to the necessity of recording them somewhere. The motion is granted.
Cheves, Johnson and Bax, JJ., concurred.
Gantt and Richardson, JJ., dissented.

 4 Stat. 656 ; see'6 Stat. 636, Appendix; Bail. Eg. 250, note.

 5 Stat. 203.

 See Chev. Eq. 30; 2 McC. Ch. 412; 2 McC. L. 152; 1 McC. R. 130; McM. Eq. 115.
See Steele v. Mansell, 6 Rich. 447, 458, and cases cited; Act of 1823, 6 Stat. 212; 2 Sp. Eq. 266.